WREN v. PEARAH.

4-9795                                      249 S. W. 2d 985

Opinion delivered July 7, 1952.

Rehearing denied October 6, 1952.

*DuVal L. Purkins* and *Ward Martin,* for appellant.

*Johnson & Peppard,* for appellee.

GRIFFIN SMITH, Chief Justice.   O. G. Wren, a resident of Little Rock, owns or has interests in about a dozen moving picture houses, one of which is in Crossett, acquired in 1940.   Dr. N. B. Pearah and his wife owned property in Crossett and in North Crossett.   North Crossett is an unincorporated business and residential section approximately a mile from Crossett proper.   In 1946 Dr. and Mrs. Pearah owned a lot in North Crossett 50 x 100 feet upon which they had planned to erect a building suitable for moving pictures.   Wren felt that a showplace in North Crossett would take business from him.   This apprehension resulted in negotiations with Dr. Pearah for purchase of the lot.

On March 9, 1946, Wren made an offer of $1,700. The written proposal contained a stipulation that Dr. Pearah would not, directly or indirectly, engage in the theatre business in the City of Crossett, "or within the distance of five miles of the City limits, either as an individual, corporation, or employe, during the time O. G. Wren or his assigns may be engaged in the theatre business in Crossett, [and] I also agree to insert a restrictive covenant in all deeds and leases which I may hereafter execute for land and/or buildings within such zone, against such lessee or grantees engaging in the theatre business during the time the said buyer, O. G. Wren, or his assigns, may be engaged in the theatre business in the City of Crossett.   And I also agree to insert these covenants in the deed which I will later execute to the purchaser, O. G. Wren."

The offer was accepted by written endorsement the day of its date.   The deed was not executed until July 31, 1946, and then it did not contain the assurance mentioned in the offer and acceptance.   Wren has not made use of the lot for theatre purposes.

June 13, 1947, Dr. Pearah and his wife sold to S. M. Burgess a tract in North Crossett 100 feet wide by 207 feet deep, the consideration being $9,697.63, payable $300 per month. This property is located about two and a half blocks from the lot Dr. Pearah sold Wren under the contract of March 9th. Default in payment occurred and the property was reacquired through foreclosure. The Commissioner's deed to Dr. and Mrs. Pearah was executed June 20th, 1949. The lot featuring in the foreclosure contained a large quonset building that had been used for roller-skating.

January 14, 1950, the Pearahs conveyed the quonset property to R. Z. Stell, who is referred to by appellant as a "man of straw." Stell promptly leased the lot and building to Cooper and Page for a term of three years at $100 per month. Appellant concedes that Cooper and Page did not know of the contract between Pearah and Wren by which the former bound himself not to become interested in the theatre business while Wren or his assigns were so engaged, and not to sell land without putting in the deed the restriction as to use.

The quonset structure was reconditioned by Cooper and Page and made into a moving picture house. It was operated as Rose Theatre from March, 1951, until July 2, 1951. Closing was caused by financial difficulties. When Cooper and Page surrendered their lease Stell executed a deed to Dr. Pearah. This transaction occurred July 10, 1951, and the following day Dr. Pearah made a contract with James D. Johnson and Fred Peppard, (attorneys who then represented the lot-owner) by the terms of which Johnson and Peppard were to purchase Rose Theatre. They agreed to pay $300 cash and remit to Dr. Pearah fifty percent of the net profits for four years.

July 16, 1951, articles of incorporation were filed with the Secretary of State and a charter granted. Stockholders were listed as N. B. Pearah, 20 shares; James D. Johnson, 10 shares; and Fred Peppard, 10 shares. The theatre was closed July 2, 1951. Seemingly it had not proved profitable. Appellees state in their brief that $40,000 had been spent on improvements; and they com-

plain that appellant stood by and failed to take any action looking to an enforcement of the rights claimed under his contract with Dr. Pearah, hence they think he is estopped.

Wren, in his prayer for injunctive relief, asked that Dr. and Mrs. Pearah be restrained from further breaching their contract; that they be permanently enjoined from directly or indirectly engaging in the exhibition of motion pictures in Rose Theatre; that Johnson-Peppard Amusement Company be enjoined from attempting to operate Rose Theatre or any other building for the exhibition of motion pictures in such area; that James D. Johnson and Fred Peppard be enjoined from engaging in the exhibition of motion pictures in Rose Theatre, or [in] any other property within such restricted zone, the title to which should be derived through Pearah subsequent to March 9, 1946, and that the order effectuating these ends be made permanent ". . . for such time as O. G. Wren, or his assigns, may be engaged in the theatre business in Crossett." There was a demand for judgment for $12,000 for damages.

We do not agree with appellees that the obligations assumed by Dr. Pearah under the contract merged with the deed to the lot Wren purchased. There was no occasion for the inclusion of the restrictive language in so far as Wren was concerned. This is true because when he became the owner his right to deal with the property in any lawful manner became absolute.

This conclusion, however, is of no benefit to Wren for the reason that the contract is a definite trespass upon public policy. It was shown that in 1945 Dr. Pearah bought the lot from Max A. Shilling for $525, and it is conceded by appellant that in paying $1,700 for the property a part of the consideration was the agreement not to engage in the theatre business within a radius of five miles, and not to sell any land within that area to anyone without perpetuating the restriction.

Contracts in partial restraint of trade with reference to a business or profession, where ancillary to a sale of the primary business or the profession, and the good will,

are valid to the extent reasonably necessary for the purchaser's protection. *Shapard* v. *Lesser,* 127 Ark. 590, 193 S. W. 262, 3 A. L. R. 247. In the cited case Marianna Cotton Oil Company executed the litigated contract to prevent the defendant and another oil company from erecting and operating a cotton gin at Rondo, in Lee county, "and thus becoming its competitor in buying cotton seed." In the opinion Judge HART said: "The avowed object of the contract . . . was to stifle competition and to promote a monopoly in the cotton seed business to the manifest injury of the public. . . . The purpose and effect of the contract was to enable the oil mill corporation to enjoy an illegitimate use of something which it already had. The contract was against public policy and the court correctly refused to allow it as a setoff against the account sued on."

An earlier case (opinion by Mr. Justice WOOD) is *Webster* v. *Williams,* 62 Ark. 101, 34 S. W. 537. The holding was that an agreement by a physician and surgeon to permanently retire from practice in a designated city and its vicinity was enforcible. The question was whether such contracts are reasonable. This, said Judge WOOD, is a matter of law, and the test to be applied "is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public."

Another case, in which the opinion was written by Mr. Justice HART, is *Kimbro* v. *Wells,* 112 Ark. 126, 165 S. W. 645. The distinction between a contract to sell a business and its good will, and a contract designed to stifle competition, was discussed. Where there is no intention to eliminate competition in circumstances where the public interest is involved, contracts reasonably limiting operations within a designated area and for a time appropriate to the needs of one claiming the advantages of such an agreement will be upheld.

Judge HART, after becoming Chief Justice, wrote the court's opinion in *Robbins* v. *Plant,* 174 Ark. 639, 297 S. W. 1027, 59 A. L. R. 1128. The conclusion was that no hard-and-fast rule had been adopted in Arkansas which

could serve as a pattern in determining when a contract is void because in restraint of trade. "Each case," says the opinion, "must be judged according to its own facts and circumstances. It is . . . well settled that a person may legally purchase the business of another for the purpose of removing competition, with an agreement on the part of the seller not to carry on the same business in the same place for a limited period of time. Covenants of this kind operate to prevent the seller from engaging in a business which he sells, so as to protect the buyer in the enjoyment of what he has purchased and to enable the seller to get the full value of his property, including the good will of his business. In general this does not injure the public, because the business is open to all other persons, and there is little danger that [the public] will suffer harm if the business is profitable."

A summation in Restatement, Contracts, Vol. 2, is copied in *Marshall* v. *Irby,* 203 Ark. 795, 158 S. W. 2d 693. The opinion by Mr. Justice FRANK G. SMITH is condensed in a headnote reading: "In the absence of statutory authorization or some dominant social or economic justification, a contract in restraint of trade is unreasonable if it is based on a promise to refrain from competition and is not ancillary to a contract for the transfer of good will or other subject of property or a contract of employment."

The Marshall-Irby contract just referred to involved a partnership between two dentists for a period of five years and an agreement that with termination of that period, or if dissolution should occur sooner, Dr. Irby would not set up an office for the practice of dentistry within the city of Rogers for a period of five years from the date of the agreement, or from the time the partnership was terminated.

In Judge SMITH's opinion there is this statement: "It will be observed that under the contract nothing was bought and nothing was sold. It relates entirely to the professional and personal services of the contracting parties. There was no sale of good will or anything else, nor was there any contract of employment. . . . We

are of the opinion that the restraint imposed upon Dr. Irby is greater than the protection of Dr. Marshall requires, and that it imposes an undue—and, under the circumstances, an inequitable—hardship upon Dr. Irby, as there was no transfer of good will or other subject of property." See *American Excelsior Laundry Company* v. *Derrisseaux*, 204 Ark. 843, 165 S. W. 2d 598. Compare *Orkin Exterminating Company* v. *Murrell*, 212 Ark. 449, 206 S. W. 2d 185.

In the case at bar Dr. Pearah made a sale of property, but the lot was vacant. There was no transfer of a going concern capable of competing with Wren, and the admitted object in buying the land was to forestall any plan Dr. Pearah may have had to use the property or permit its use for theatre purposes. It is not necessary to say what our determination would have been if the contract had been that a restrictive clause would be placed in this particular deed. The agreement went beyond the immediate subject and by its terms prohibited the grantor from selling land that he then owned or might thereafter own within the five-mile zone without restricting its use ". . . during the time . . . Wren, or his assigns, may be engaged in the theater business in the City of Crossett."

We think the restraint was unreasonable. Wren might operate his theatre an indeterminate number of years and then sell to interests equally concerned with protracted protection against competition. How long this would continue is purely speculative, but our cases and the general rule in many other jurisdictions is that such contracts are against public policy.

We agree with the Chancellor that the injunctive relief prayed for should not be given.

Affirmed.