Ron EASLEY *v.* SKY, INC.

CA 84-354                                                    689 S.W.2d 356

Court of Appeals of Arkansas
Division II
Opinion delivered May 15, 1985

*Pryor, Robinson & Barry*, for appellant.

*Ronald W. Metcalf, P.A.*, for appellee.

TOM GLAZE, Judge. This is an appeal by Ron Easley from the decision of the Chancery Court of Sebastian County, Fort Smith District. On October 14, 1982, Sky, Inc., (hereinafter Sky) entered into an agreement whereby it purchased the Ozark Truck Plaza, an ongoing business, from Easley and his partner Brouwer. Paragraph 8 of the agreement set forth the following anticompetition clause:

> Sellers, for and in consideration hereinabove mentioned, each agree that for a period of five (5) years from the date hereof, none of them, either directly or indirectly, or as a proprietor, partner or stockholder of any firm, business or corporation, will, without the prior written approval of the Board of Directors of Buyer, own, operate, invest, or be interested in a truck stop, mini-truck stop, service station or any other business by whatever name it is called or known, wherein over seventy (70%) of the annual gross revenue of such business is from the sale of gasoline, diesel fuel and other petroleum products. This provision of this

Agreement shall apply to a geographic radius one hundred (100) miles from the City of Alma, Arkansas, except U.S. Highway 71 south of the corporate limits of the City of Fort Smith, Arkansas.

On December 21, 1983, Easley began operating the Short Stop Mini-Mart, a convenience store where gasoline and diesel fuel were sold. The store is located on south 71, one mile inside the city limits of Fort Smith.

Sky sought a permanent injunction against Easley for violating paragraph 8 of the agreement of October 14, 1982. Easley denied violating paragraph 8 and counterclaimed that paragraph 8 was unreasonably broad in its provisions regarding duration, territorial extent, and the nature and scope of its restraint and was unnecessary for Sky's protection. The chancellor held the anticompetition clause valid and reasonable in all respects. He found that the agreement was necessary and validly protected the interest of Sky and granted a permanent injunction restraining Easley from future violations of the agreement. We believe the law and the evidence support the chancellor's decision.

The law pertaining to restrictive sale covenants is well settled. Contracts in partial restraint of trade, ancillary to a sale or a business transaction, are valid to the extent reasonably necessary for the purchaser's protection. *Wren* v. *Pearah*, 220 Ark. 888, 891-2, 249 S.W.2d 985, 987 (1952); *accord, Madison Bank & Trust* v. *First National Bank of Huntsville*, 276 Ark. 405, 408, 635 S.W.2d 268, 270 (1982). In order to determine what constitutes a reasonable restraint of trade, each contract must be judged according to the circumstances and facts in that case. *Robbins* v. *Plant*, 174 Ark. 639, 643, 297 S.W. 1027, 1029 (1927); *accord, Stubblefield* v. *Siloam Springs Newspapers, Inc.*, 590 F. Supp. 1032, 1035 (W.D. Ark. 1984). A restraint of trade agreement which is ancillary to the transfer of a business is more likely to be upheld than is one ancillary to an employment contract. *Madison Bank & Trust, supra*, 276 Ark. at 409. The party challenging the validity of the restraint has the burden to show its unreasonableness. *Id.* The trial court will not be reversed unless its findings are clearly erroneous. *Id.* If the restraint lasts longer than is necessary to protect the promisee's interest, covers a geographic area larger than is necessary to protect those interests, or prohibits the promisor from engaging in activities

which are unnecessary to protect the promisee, it is unreasonable. *See Stubblefield, supra,* 590 F. Supp. at 1035; 6A A. Corbin, *Corbin on Contracts,* § 1387 (1951); Restatement (Second) of Contracts, § 188 comment d (1981).

In this appeal Easley challenges (1) the duration of the restriction against competition, (2) the scope of the activities prohibited by it and (3) the geographic radius described in the restriction. We consider each of these contentions in order.

First, Easley contends the duration of the restrictive covenant is unreasonably long. The case law tends to be against his contention. The overwhelming majority of other jurisdictions which have dealt with the use of an anticompetition clause in the sale of a service station have upheld durations of five years or more. Annot., 45 A.L.R.2d 77, 168 (1956). Arkansas law is in accord. For example, our Supreme Court in *Hultsman v. Carroll,* 177 Ark. 432, 6 S.W.2d 551 (1928), held a restriction, preventing the seller of a gasoline station from selling gasoline on a specific lot, reasonable, even though it was for the lifetime of the seller. The most recent Arkansas case dealing with the effect of a restrictive covenant ancillary to the sale of a business held that a duration of ten years was reasonable. *Madison Bank & Trust, supra.* In sum, we conclude that as a matter of law there is nothing inherently unreasonable with a duration restriction lasting five years. We also find the facts in the instant case justify a five-year period. Sky purchased the Ozark Truck Plaza business for the sum of $1,125,000.00, but, in addition, it expended approximately $400,000.00 in repairs and improvements to the existing facility. Max Young, a co-owner of Sky, testified that the five-year restriction contained in the parties' agreement would allow Sky to amortize a large part of its initial debt and recapture a substantial part of its investment. Without the five-year period, Young asserted, Easley would have an unfair competitive advantage. The chancellor obviously agreed with Young's assessment, and in our *de novo* review of the record, we are unable to say the chancellor was clearly wrong.

Next, Easley argues the parties' covenant not to compete is oppressively broad because it not only prohibits Easley from owning a convenience store engaging in the retail sale of gasoline for automobiles, it also precludes him from becoming a wholesale distributor for, or employee of, an oil company. Easley

also points out that Sky co-owner, Gene Kuykendall, is a shareholder in the K & K Oil Company, Inc., (a wholesale petroleum distributor) and that that company directly benefits from the unreasonable restriction of activities imposed upon Easley by the anticompetition clause in question. As we have indicated earlier, the scope of the activities prohibited cannot cover more activities than is necessary to protect the interest of the purchaser. *See Little Rock Towel & Linen Supply Co.* v. *Independent Linen Services Co. of Arkansas*, 237 Ark. 877, 377 S.W.2d 34 (1964). Here, however, we believe the record clearly reflects that prohibiting Easley from the wholesale distribution of petroleum was necessary to protect Sky's interest in Ozark Truck Plaza. Gary Brouwer, Easley's former partner, stated that when he worked for a wholesale distributor, he would solicit business from various truck lines. Brouwer further testified that, as a wholesale distributor, he believed that by using his contacts with other truck stops he could affect the operation of Ozark Truck Plaza, and he conceded that Easley could do likewise. Accordingly, we are compelled to hold the restriction concerning Easley's activities is substantiated by the evidence and is valid.

■ Easley's final contention is that the geographic scope of the restrictive covenant, a 100-mile radius, was unnecessarily large. The general rule is that territory included in the covenant, in order to be reasonable, must be necessary for the protection of the promisee's interest. *Madison Bank & Trust, supra*, 276 Ark. at 411. While Arkansas has not expressly authorized a 100-mile radius as a reasonable restraint, the majority of other states have, if the business sold extends throughout that territory. Annot., 46 A.L.R.2d 119, 373 (1956). Young's, Kuykendall's, and Brouwer's testimony all indicated that trucks refuel every 100 to 200 miles and that it was on this basis the 100-mile radius was chosen. Brouwer further testified that it was a rule of thumb for distributors, when setting up truck-stop franchises, to space them about 150 miles apart so that the trucks could refuel at the same type of station. Easley testified that, prior to the sale of Ozark Truck Plaza, sales to truckers made up over 90% of the business at Ozark Truck Plaza. This evidence shows that the area included in the restriction was necessary for Sky's protection. Therefore, the chancellor's determination that the geographic scope of paragraph 8 is reasonable is not clearly erroneous.

Because the evidence supports the chancellor's findings that

the scope, geographic extent, and duration provisions of paragraph 8 were reasonable and valid, we affirm the decision of the chancellor.

Affirmed.

COOPER and CORBIN, JJ., agree.