FEDERATED MUTUAL INSURANCE COMPANY and
Federated Life Insurance Company *v.* Billy Eugene "Gene"
BENNETT, Jr.

CA 91-236                                        818 S.W.2d 596

Court of Appeals of Arkansas
Division II
Opinion delivered November 13, 1991

*Davis, Cox & Wright*, by: *Wm. Jackson Butt II*, and *Tim E. Howell*, for appellants.

*Estes, Estes, & Gramling*, by: *Peter G. Estes, Jr.*, for appellee.

ELIZABETH W. DANIELSON, Judge. Federated Mutual Insurance Company and Federated Life Insurance Company appeal from the Washington County Chancery Court's refusal to enforce a covenant not to compete against appellee, Billy Eugene Bennett, Jr., appellants' former employee. Appellants contend that the covenant should have been enforced; that the chancellor erred in refusing to admit certain evidence; and that the chancellor erred in refusing to apply the employment contract's severability clause. We disagree and affirm.

Appellee went to work as a marketing representative, or agent, for appellants in December of 1980, with an assigned territory which included several counties in northwestern Arkansas. Appellee was appellants' only marketing representative assigned to this territory and could not sell insurance for any other company. In 1983, the parties signed an employment contract, which included the following provision:

> 5. Marketing Representative agrees that he will not, within a period of two years following the date of the voluntary or involuntary termination of his employment with Employer, or his retirement therefrom, either directly or indirectly, by and for himself, or as the agent of another, or through others as his agent:
>
> (a) Divulge the names of Employer's policyholders and accounts to any other person, firm or corporation if these accounts are located within the territory assigned from time to time:
>
> (b) In any way seek to induce, bring about, promote, facilitate or encourage the discontinuance of or in any way solicit for and in behalf of himself or others, or in

any way quote rates, accept, receive, write, bind, broker or transfer any renewal or replacement of any of the insurance business, policies, risks or accounts written, issued, covered, obtained (whether through the efforts of Marketing Representative or not) or carried by Employer in the territory assigned to Marketing Representative under this Employment Contract; nor will the Marketing Representative accept, receive, obtain, write, place, bind or broker insurance business or insurance policies of any type for any of Employer's policyholders and customers in said territory assigned within the said two year period.

In May 1990, appellee notified appellants that he had decided to resign at the end of that month. After terminating his employment with appellants, appellee began selling insurance for the Fulmer Insurance Agency. In October 1990, appellants filed suit against appellee, seeking specific performance of the covenant not to compete. In his answer, appellee asserted that the covenant not to compete was unreasonable and against public policy and, therefore, unenforceable.

Covenants not to compete are not looked upon with favor by the law. *Duffner* v. *Alberty*, 19 Ark. App. 137, 139, 718 S.W.2d 111, 112 (1986). In order for such a covenant to be enforceable, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed. *Id.*; *Rebsamen Ins.* v. *Milton*, 269 Ark. 737, 743, 600 S.W.2d 441, 443-44 (Ark. App. 1980). Here, it is not argued that the geographic restriction was overbroad or that the time limitation was unreasonable. Appellee successfully asserted at trial that appellants had no valid interest in preventing him from selling lines of insurance not offered by appellants. Covenants not to compete will not be enforced unless a covenantee had a legitimate interest to be protected by such an agreement, and the law will not enforce a contract merely to prohibit ordinary competition. *Duffner* v. *Alberty*, 19 Ark. App. at 139, 718 S.W.2d at 112; *Import Motors, Inc.* v. *Luker*, 268 Ark. 1045, 1051, 599 S.W.2d 398, 401 (Ark. App. 1980). The test of reasonableness of contracts in restraint of trade is that the restraint imposed upon one party must not be greater than is

reasonably necessary for the protection of the other and not so great as to injure a public interest. *Duffner* v. *Alberty*, 19 Ark. App. at 139, 718 S.W.2d at 112. *Accord Evans Labs., Inc.* v. *Melder*, 262 Ark. 868, 871, 562 S.W.2d 62, 64 (1978); *Girard* v. *Rebsamen Ins. Co.*, 14 Ark. App. 154, 159, 685 S.W.2d 526, 528 (1985). As we stated in *Duffner* v. *Alberty*, 19 Ark. App. at 141, 718 S.W.2d at 113, "[a]lthough contracts between individuals ought not to be entered into lightly, all other considerations must give way where matters of public policy are involved." The validity of these covenants depends upon the facts and circumstances of each particular case. *Duffner* v. *Alberty*, 19 Ark. App. at 140, 718 S.W.2d at 113. *Accord Miller* v. *Fairfield Bay, Inc.*, 247 Ark. 565, 569, 446 S.W.2d 660, 663 (1969); *Rebsamen Ins.* v. *Milton*, 269 Ark. at 742, 600 S.W.2d at 443.

Where a covenant not to compete grows out of an employment relationship, the courts have found an interest sufficient to warrant enforcement of the covenant only in those cases where the covenantee provided special training, or made available trade secrets, confidential business information or customer lists, and then only if it is found that the associate was able to use information so obtained to gain an unfair competitive advantage. *Duffner* v. *Alberty*, 19 Ark. App. at 139-40, 718 S.W.2d at 112.

■ At trial, evidence was introduced that, after appellee began employment with the Fulmer Agency, he provided some insurance policies to several of his former customers but only sold them types of insurance that they could not obtain from appellants; appellee did not sell any policy that replaced one of appellants' policies. Appellants also did not lose any profits as a result of appellee's employment with the Fulmer Agency.

Billy Roses, appellants' district marketing manager for Arkansas and Louisiana, testified that, after marketing representatives are hired, they are sent to Owatonna, Minnesota, for three weeks' training. After they return, he assists them in their offices for four days. Then, for a seven-month period, his practice is to provide two to three days of on-site supervision every other week. After four months, appellants send the marketing representatives to Atlanta for seminars and, at the end of a year, to Owatonna for an additional seminar. Periodically, each marketing representative comes into the district office for further

training. Mr. Roses also testified that it takes approximately one and a half to two and a half years to fully train a new agent.

Mr. Roses stated that the clients' only contact with the company is through the agent at the customers' places of business. He provided a list of forty-eight commercial accounts in appellee's territory as of the day appellee left and testified that information about these accounts was available to appellee. This information included "[e]verything that pertains to the insurance they have and all the coverages they have." There is no evidence, however, that appellee utilized such information to entice away any of appellants' clients.

Mr. Roses testified that having a personal relationship with clients and having already sold them some kind of insurance is helpful in selling them additional types of insurance. He stated that appellants had no objection to appellee's soliciting business of any kind with anyone not on the list but did want to prevent him from selling any type of insurance to the customers listed thereon. He stated: "Well, Mr. Bennett is a sales person and, obviously, he's got to know these people very well and he's got his foot in the door and as a sales person, I can't control what he says to those insureds pertaining to the business that we have on the books."

Appellee admitted that he has sold some insurance to several of appellants' clients but testified that appellants did not make these policies available to these clients. He also stated that he has written some collateral protection policies to the customers of Williams Ford Tractor, with the lending institutions listed as the named insureds. He stated that, at one time, appellants sold a few collateral protection policies to customers of Williams Ford Tractor but that the insureds listed on those policies were Williams Ford and its customers. Appellee also testified that another client of appellants, Stanley Greenwood, asked to buy some life insurance from appellee but appellee refused to sell it because Mr. Greenwood had already bought a policy from Federated Life Insurance.

At the end of the trial, the chancellor stated:

I don't see any problems with the geographical area. As I see it, though, there is one other major difference in the matter here. Mr. Roses says, "Judge, we not only are

> interested in seeing that Mr. Bennett doesn't compete with us for business we are writing now, but we don't want him competing with us for the same companies or business that we're not writing now." That clause is big enough to include it. . . . But by being big enough to include that, the Court finds that that in itself makes the clause unreasoanble. Because . . . there is no evidence in this case that Mr. Bennett is competing directly with Federated Insurance Company for any business that Federated is now selling. . . . Federated is wanting to stop him from writing any other insurance.

The chancellor concluded that appellee was not exercising unfair competition in selling a product that appellants did not sell and found the covenant not to compete to be overly broad and void. We agree.

■ For their second point on appeal, appellants argue that the chancellor erred in refusing to admit evidence of appellee's actions prior to leaving appellants. Appellants attempted to introduce testimony and documentary evidence of appellee's failure to follow appellants' policy concerning the referral of business by its marketing representatives and proffered evidence that appellee referred business to the Fulmer Agency while still employed by appellants. The chancellor found the evidence to be outside the pleadings and sustained appellee's objection. The chancellor said that the sole issue before the court was whether the covenant not to compete was enforceable and not whether appellee had violated some other clause in the contract. We agree and cannot say that the chancellor erred in refusing to admit this evidence.

■ In their third point on appeal, appellants argue that the chancellor erred in refusing to apply the severability clause of the contract. They assert that the chancellor should have severed the offending language of the covenant not to compete, thereby allowing this provision to remain valid as to lines of insurance actually offered by appellants. Simply striking the offending language of the covenant not to compete, however, would not suffice. In order to accomplish appellants' purpose, it would be necessary to rewrite the covenant not to compete, and this we will not do. It has long been the rule that, when a covenant not to

compete is too far-reaching to be valid, we will not make a new contract for the parties. *Rector-Phillips/Morse, Inc.* v. *Vroman*, 253 Ark. 750, 753, 489 S.W.2d 1, 4 (1973).

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.