BORDEN, Inc. *v.* Sammy L. HUEY

76-350                                        547 S.W. 2d 760

Opinion delivered March 21, 1977
(Division I)

*Eichenbaum, Scott, Miller, Crockett & Darr,* by: *James E. Darr, Jr.* and *Leonard L. Scott,* for appellant.

*Guy Jones, Jr., Guy H. Jones, Phil Stratton,* and *Casey Jones,* for appellee.

GEORGE ROSE SMITH, Justice. In a sense this case is a sequel to *Borden, Inc.* v. *Smith,* 252 Ark. 295, 478 S.W. 2d 744 (1972). There Vogel's, Inc., a subsidiary of the appellant Borden, Inc., inserted in its employment contracts a provision prohibiting former employees from competing with Borden for one year after the termination of their employment and within a territory comprising 63 of Arkansas's 75 counties and parts of three neighboring states. We held the restrictions invalid, on the ground that the prohibited territory was unreasonably large.

After that decision, according to the testimony in this case, Vogel's rewrote the non-competition clause to bring it down "into the smallest area we could to protect the integrity of our contract." The revised contract retained the one-year limitation, but reduced the territorial restriction to the county seats of counties in which the employee had sold Borden's products (frozen and unfrozen foods, primarily) during the last two years of his employment by Borden.

The plaintiff, Sammy L. Huey, worked as a salesman for Vogel's from 1966 until 1969 and again from September, 1970, until he voluntarily left the company in June, 1975. He had signed an amended and substituted employment con-

tract in December, 1974, containing the new restrictions. Huey, upon leaving Vogel's, went into a competitive business as a salesman for Porter Foods. When he brought this suit against Borden to recover severance pay, about which there is no longer any dispute, Borden sought by counterclaim to enjoin Huey from violating the restrictions in his contract of employment and to recover damages for its breach. This appeal is from a decree finding the territorial restrictions to be valid but the one-year limitation to be unreasonably long.

We agree with the chancellor's finding that the territorial restrictions are valid. Under the contract Huey was forbidden to engage in a competitive business in only four county seats, having these 1970 populations: Conway, 16,-772; Morrilton, 6,814; Clinton, 1,029; and Perryville, 815. Huey testified that he had understood the contract to refer only to the county seat of his residence, Conway; so he did not compete there after he left Borden. Thus the prohibition extended to three cities having a total population of less than one half of one percent of the State's population of 1,923,295, or, if Conway be included, about 1.3 percent of the total. Huey worked in Pulaski County and elsewhere while he was temporarily enjoined from competing in the four specified county seats. Apparently he earned as much as he had been earning before he left Borden. We find the territorial restriction to be reasonable. In fact, counsel for Huey make no argument to the contrary.

The one-year limitation presents a closer question, but we think it too to be reasonable. Each case of this kind is to be determined upon its own facts. *Miller* v. *Fairfield Bay,* 247 Ark. 565, 446 S.W. 2d 660 (1969). Sam Vogel, Borden's district manager, testified that the time limitation had previously been reduced from two years to one year, which he considered reasonable. It was co-ordinated with one-year promotions provided by suppliers. The preliminary injunction against Huey was not issued until nine months after he left Borden. Vogel testified that the company's sales in Huey's territory had been running about 1% behind the preceding year, but Huey's competition caused that figure to drop to about 9% behind by the end of the year (Huey left in June) and to about 13% the next year. The consequent loss of

profits was estimated at from $10,000 to $15,000. There was no comparable testimony in the two cases cited by the appellee: *Orkin Exterminating Company* v. *Weaver,* 257 Ark. 926, 521 S.W. 2d 69 (1975), and *Rector-Phillips-Morse* v. *Vroman,* 253 Ark. 750, 489 S.W. 2d 1, 61 A.L.R. 3d 391 (1973). To the contrary, in *Orkin* the former employee had obtained, a year after his discharge, only 18 out of Orkin's 702 monthly customers. No comparable figures are mentioned in *Rector.*

The appellee argues that Borden's restrictions were designed to shield Borden from the ordinary competition that may occur whenever any employee leaves a job. In the circumstances of this case that is hardly true. Vogel described the company's vulnerability to competition from former employees who knew the company's customers and their credit ratings. Many decisions in other states have recognized the importance of such "customer-contact" by employees. "The most important single asset of most businesses is their stock of customers. Protection of this asset against appropriation by an employee is recognized as a legitimate interest of the employer. A restrictive covenant, therefore, fulfills the first requirement on which its enforceability depends, if it is necessary to protect the employer against loss of his customers." Annotation, 41 A.L.R. 2d 15, 71 (1955). The annotator goes on to point out that an employer is especially vulnerable when an employee, such as a route man, deals with customers away from the employer's place of business and builds up personal relationships that bind the customers to himself instead of to the employer's business. That reasoning applies to the case at bar, Huey having been an outside salesman for Borden.

The appellee also argues that his written contract with Borden recited that he was employed for 12 weeks, after which either party could terminate the relationship upon 14-days' notice. Hence, it is said, Borden could hire a person for only 12 weeks and then, by discharging him, invoke the one-year restriction upon competition. Here that argument is academic. Huey had been working continuously for Borden for more than four years when the particular contract was signed. He was not discharged; he resigned. Vogel explained that the 12-week provision was meant for new employees and really shouldn't have been in Huey's contract. Moreover, a

period of 12 weeks would presumably be sufficient for a route man to ingratiate himself with the company's customers. Thus the 12-week limitation is not shown to be so unreasonable as to vitiate the contract.

Reversed and remanded.

We agree. HARRIS, C.J., and BYRD and ROY, JJ.