Pat A. GIRARD *v.* REBSAMEN INSURANCE COMPANY

CA 84-365                                        685 S.W.2d 526

Court of Appeals of Arkansas
Division II
Opinion delivered March 13, 1985
[Rehearing denied April 3, 1985.]

*Davis, Cox & Wright,* by: *Constance G. Clark,* for appellant.

*Mitchell, Williams, Selig, Jackson & Tucker,* by: *Allan Gates* and *Douglas B. Ward,* for appellee.

TOM GLAZE, Judge. Appellant seeks reversal of the chancellor's decision upholding the validity of the non-

competition clause of the employment contract between him and appellee. Appellee cross appeals claiming the judge erred in determining the proper amount of damages awarded appellee. After careful consideration of the excellent briefs and arguments of both parties and the thorough memorandum decision by the chancellor, we affirm the trial court's decision except we modify its award of damages to appellee.

In July of 1975, appellant was hired by Pete Gardner to manage the Gardner Insurance Agency in Springdale, Arkansas. Five months later, Gardner sold his agency to appellee, and Gardner and appellant continued with the agency, Gardner as a vice-president and appellant as an insurance salesman. On September 11, 1981, the appellant and appellee entered into the contract in question. The terms of the agreement pertinent here are found in paragraphs 5 and 6 which read:

5. *Restrictions After Termination.*
Producer agrees that after the termination of his employment, regardless of whether with or without cause, he will not:

(a)   either directly or indirectly solicit or accept, or assist in the solicitation or acceptance of, any insurance business from any account which Producer was servicing for Rebsamen at the time of such termination. . . .

6. *Violation of Restrictions.*
If, during a period beginning with the date of termination of Producer's employment and ending after the expiration of either two (2) years or a lapse of time equal to the length of time he was employed by Rebsamen (whichever is shorter), Producer is a procuring cause for any commission or other compensation becoming payable to Producer. . .in violation of any restriction of Paragraph 5 of this Contract, Producer shall promptly pay to Rebsamen an amount equal to such compensation. This payment. . .shall not preclude Rebsamen from obtaining any injunctive

or other legal or equitable relief to which it may otherwise be entitled. . . .

On August 31, 1983, appellant quit his employment with appellee and the next day opened his own business as an independent insurance agent, selling policies of the same general types and coverages that he sold while employed with appellee. During the weeks following his departure from appellee, appellant wrote sixteen new policies for former appellee accounts which he had serviced when employed with appellee. On September 27, 1983, appellee brought this action for injunctive relief and damages, seeking to enforce its covenant not to compete that appellant had signed. Upholding the validity of the parties' agreement, the chancellor enjoined appellant from soliciting or accepting insurance accounts he had serviced when he was with appellee, held that the injunction would expire on September 1, 1985 (two years after he quit appellee) and awarded appellee $3,144.05 in damages.

In his argument appellant relies heavily on *Rebsamen Insurance* v. *Milton,* 269 Ark. 737, 600 S.W.2d 441 (Ark. App. 1980), wherein this Court found Rebsamen had failed to prove it had a valid interest to protect and therefore held the non-competition covenant unreasonable and against public policy. The appellant contends that here, as in *Milton,* the appellee failed to prove that appellant took with him any trade secrets, secret formulae, methods or devices which gave him any competitive advantage over his former employer; thus, appellant argues, appellee simply has no legitimate business interest entitled to protection by a covenant not to compete. We cannot agree.

As we noted in *Milton,* the enforceability of a covenant not to compete depends upon its reasonableness in light of the particular facts of the case. *Id.* at 742, 600 S.W.2d at 443; *see also Borden, Inc.* v. *Huey,* 261 Ark. 313, 547 S.W.2d 760 (1977). While we agree with appellant that no trade secrets were shown to exist in appellee's business, the appellee's proof did show that its customer list and related information were protected interests. Just such an interest was protected in *Borden* v. *Huey, supra,* wherein the Supreme Court said:

> The most important single asset of most businesses is their stock of customers. Protection of this asset against appropriation by an employee is recognized as a legitimate interest of the employer. A restrictive covenant, therefore, fulfills the first requirement on which its enforceability depends, if it is necessary to protect the employer against loss of his customers.

*Id.* at 316, 547 S.W.2d at 761.

The Court in *Borden* further pointed out that an employer is especially vulnerable when an employee deals with customers away from the employer's place of business and builds up personal relationships that bind the customers to himself instead of to the employer's business. From our review of the evidence, that situation exists here. Appellee's senior vice-president, Jack Garrison, testified that appellee's business plan was for its policyholders to identify with one of its sales representatives. By the very nature of the insurance business, Garrison said that a client wants to deal with a particular salesman with whom he has a comfortable relationship and who understands the client's business. This is the precise reason, Garrison stated, why appellee provided the appellant with a car and an expense account. Gardner agreed with Garrison's assessment. In fact, even appellant, while denying he solicited their business, admitted that some of the former appellee clients he had previously serviced had changed their accounts to his new agency because they were personal friends. However, these "personal friends" were customers who originated with Gardner and appellee and whose accounts had been assigned to appellant for ongoing sales and service. Thus, the clear inference is that appellant's relationship with these personal friends and clients resulted from his employment with appellee. Consistent with *Borden* and the rationale contained therein, we have no problem affirming the chancellor's finding that appellee had a legitimate interest to protect.

We next must decide whether the restrictions under the parties' covenant not to compete are broader than necessary to protect appellee's business interests. In resolving this

issue, the test, as stated in *Orkin Exterminating Co.* v. *Murrell,* 212 Ark. 449, 206 S.W.2d 185 (1947), is:

> "A contract in restraint of trade is valid when founded on a valuable consideration, if the restraint imposed is reasonable as between the parties and not injurious to the public by reason of its effect upon trade. Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interest of the party in whose favor it is given, and not so large as to interfere with the interests of the public."

*Id.* at 456, 206 S.W.2d at 189 (quoting *Edgar Lumber Co.* v. *Cornie Stave Co.,* 95 Ark. 449, 130 S.W. 452 (1910)).

Appellant contends the restrictive covenant's two-year time limit and its silence with respect to geographical area are unreasonable. However, when viewing the covenant against the facts of this case, we find no merit in appellant's contentions. The chancellor correctly distinguished the non-competition covenant in *Rebsamen Insurance* v. *Milton, supra,* from the one in issue here. First, Milton was forbidden to engage in any insurance *or other business* in which Rebsamen was engaged, whereas, here appellant was prohibited from engaging in the insurance business only. Second, and more importantly, Milton was forbidden to solicit or accept indirectly insurance business from any current customer or account or one who had been a customer at any time within three years of Milton's termination; while here appellant is prohibited for two years from soliciting or accepting insurance only from customers whose *accounts he serviced* at the time of his termination. Undisputedly, appellant's restrictions concerning his post-termination business activities are much narrower than in *Milton.*

Under the parties' agreement, appellant is not forced to go elsewhere to open his agency. Since no geographical restriction is mentioned, he can continue his business in the same city in which he lived while employed with appellee. Appellant is free to solicit and accept business from 95% of the overall insurance market, and, in fact, is free to solicit

and accept business from 80% of the customers of appellee's Springdale office. Appellant's only restriction involves that portion of appellee's business that he serviced when he quit appellee.

Appellee's proof also establishes the reasonableness of the two-year restriction. Garrison testified that recruiting, replacing and training someone for appellant's position would require at least two years before his replacement would know the business. He stated the appellee's costs for providing this training were based upon a two-year period. From the evidence presented, we agree with the chancellor's assessment that the non-competition covenant is reasonable under the circumstances.

Appellant raises one last, challenging point which we must consider before turning to appellee's cross appeal. Relying upon the reasoning in *Evans Laboratories, Inc.* v. *Melder,* 262 Ark. 868, 562 S.W.2d 62 (1978), he contends that the non-competition covenant unreasonably interferes with the rights of the public to deal with the insurance agent of their choice. Appellant claims that he did not *solicit* any of the appellee's clients, and because the covenant prohibits him from even *accepting* such clients, the agreement unduly interferes with the right of the public to avail itself of the agent it prefers to use.

While we must admit the *Melder* case gives us pause for concern, we believe its holding must rest on its own facts. In *Melder,* the businesses involved were competing pest control companies. The employee, Mr. Cingolani, quit Evans Laboratories and agreed not to solicit or accept any former customers of Evans whom he (and co-employee Melder) had previously serviced. There was no proof of solicitation by either Cingolani or Melder. The Supreme Court held that the non-competition agreement was a restraint of trade and found that Evans Laboratories' customers had departed from it because of their satisfaction with Cingolani's service, not because of any solicitation on his part. The Court also concluded that no trade secrets were involved. Under these

circumstances, the Supreme Court concluded that the provision prohibiting Cingolani from accepting appellant's former customers was an undue interference with the public interests.

We do not read *Melder* to invalidate all non-competition agreements that prohibit an employee from accepting — as opposed to soliciting — former employer customers. Rather, in considering *Melder* along with the other Supreme Court decisions on the subject, the most that can be stated is that each contract and set of facts must be considered to determine the contract's reasonableness relative to the parties' and public's interests. *See, e.g., Bailey* v. *King*, 240 Ark. 245, 398 S.W.2d 906 (1966); *Robbins* v. *Plant*, 174 Ark. 639, 297 S.W. 1027 (1927); *Edgar Lumber Co.* v. *Cornie Stave Co., supra.* We have already noted that, as in *Melder*, no trade secrets are involved here. However, unlike in *Melder*, appellee has clearly shown a legitimate business interest which results from its sales representatives program that is designed to encourage the development of a personal or confidential relationship between its agents and the customers they service.

Also different from *Melder*, appellant here agreed not to solicit or accept directly *or* indirectly appellee accounts he previously had serviced. Although he denied directly soliciting any of appellee's accounts, appellant conceded that *prior* to his departure from appellee, he informed his customers that he planned to leave appellee. He said some of the customers expressed that they wanted him to continue to handle their business. Although he asserted that he told the customers he could not directly solicit their business, he did write their policies after leaving appellee. Appellant also testified that he advised customers concerning what they must do for him to be able to handle their business, *viz.*, produce an agent of record letter or provide him with their insurance files. Appellant further testified that some former appellee clients responded to newspaper ads he ran soon after he left appellee, and he undisputedly wrote policies for these customers. By his own testimony, the appellant has shown, at the very least, that he indirectly solicited former

appellee customers whom he previously had serviced.[1] Thus, in contrast to *Melder*, the appellee here proved it had a legitimate interest to protect and appellant's solicitation, even if indirect, contravened the parties' contract designed to protect that interest.

Having affirmed the chancellor's decision that the parties' non-competition agreement is reasonable and enforceable, we discuss appellee's cross appeal. The chancellor determined that appellant had written sixteen policies for accounts he had serviced for appellee at the time he quit and further found the premiums he received on these policies totaled $7,631.65. However, the chancellor denied damages on four of the sixteen policies because these policyholders had requested bids from both appellant and appellee, and, in each instance, appellant's bid was low and the business was awarded to him. The premiums for the four policies totalled $4,487.60. Citing no authority, the chancellor allowed the appellant the premiums on the four policies and awarded appellee the difference which was $3,144.05.[2] We find the chancellor erred in this respect. We find it difficult to distinguish these four appellee clients whom appellant previously serviced from the other twelve. To do so we fear would lead only to further problems. For example, former employees under an otherwise valid covenant not to compete could merely justify obtaining and servicing former clients on the sole basis that they had bid a few dollars less than the former employer.

Because we find the parties' non-competition contract valid in all respects, we affirm the chancellor's decision; but we remand the cause to modify the trial court's award to

[1]One customer, Ted Cordes, who manages Precision Auto Parts and Marine, testified that appellant did attempt to solicit his business. Cordes said that appellant came to his place of business to talk with Virgil Cordes, but in a brief conversation with Ted, appellant said that he had left appellee but to call him when the time comes up for insurance.

[2]In his opinion, the chancellor mentioned policies appellee wrote but cancelled for businesses owned by Bob Ward. He stated appellee should not be heard to deny appellant this business when it refused to write it. However, none of the four policies belongs to Ward and from the abstract we fail to find how Ward's situation relates to these four policyholders.

appellee so that it includes the $4,487.60 on the four policies previously excluded.

Affirmed as modified.

CRACRAFT, C.J., and CORBIN, J. agree.