## QUALITY LIQUID FEEDS, INC. *v.*
## William Terry PLUNKETT

CA 04–228

199 S.W.3d 700

### Court of Appeals of Arkansas
### Opinion delivered December 8, 2004

*Harrill & Sutter, P.L.L.C.*, by: *Raymond Harrill*, for appellant.

*Page, Thrailkill, and McDaniel*, by: *Patrick McDaniel*, for appellee.

Robert J. Gladwin, Judge. This case involves a covenant not to compete in an employment contract. The employer, appellant Quality Liquid Feeds, Inc., which has its principal place of business in Wisconsin, attempted to enforce the covenant after appellee William Terry Plunkett left its employ and started his own competing business. The Polk County Circuit Court refused to enforce the agreement. On appeal, Quality contends that the trial court failed to follow the law and that its findings are not supported by the evidence. We affirm the circuit court's decision.

Quality, which manufactures and sells feed supplements for the cattle and dairy industries, does business in over thirty states. In 1989, it hired Plunkett as a territorial sales manager. After several years, Plunkett requested that his job duties and territory be reduced, and he accepted a position as a district sales manager. From the beginning of their association, the parties had an employment contract that contained a non-competition agreement. When Plunkett became a district manager in 1998, he signed

another contract that, according to Quality, contained such a provision.[1] The employment contract stated:

> B. That for a period of two (2) years after the date of termination of this agreement, Employee shall not, on his own behalf, or as an Employee, agent, consultant, officer or director of any other person or entity, engage in, or aid or assist anyone else engaging in the business of the preparation or sale of liquid or solid block feed products or any other product manufactured or marketed by or through Employer within the area defined in paragraph number 1 of this agreement.[2]

> . . . .

> D. That for a two (2) year period from the date of termination of this agreement Employee will not solicit, divert, or take away or attempt to solicit, divert, or take away, directly or indirectly, for his own benefit or for the benefit of any other person, any of Employer's customers, including those who were serviced by Employee or with whom Employee became acquainted by reason of access to or knowledge of information gained during the term of his employment with Employer.

> E. Employee understands these covenants set forth in section numbered 8 and agrees that these covenants do not create any hardship on Employee and Employee agrees to abide thereby.

---

[1] At trial, Plunkett argued that his copy of the contract had not contained that provision. It appeared, however, that the copy of the contract on which he based this assertion simply had a page missing.

[2] The contract set forth the following area:

Permanent Area — In the state of ARKANSAS the counties of Benton, Carroll, Boone, Washington, Madison, Newton, Searcy, Crawford, Franklin, Johnson, Pope, Conway, Van Buren, Sebastion [sic], Logan, Yell, Perry, Faulkner, Scott, Polk, and Montgomery.

In the state of OKLAHOMA the counties of Ottawa, Delaware, Adair, Sequoyah, Leflore, McCurtain, Pushmataha, Latimer, Haskell, Cherokee, Mayes, Craig, Wagoner, Muskogee, McIntosh, Pittsburg, Chocktaw and Atoka.

Temporary Area — In the states of Arkansas and Oklahoma any other mutually agreed upon dealers will also be included in this district. Currently, The Feed Store & More in Anderson, Missouri is included in this district. Employer reserves the right to change this temporary area at any time with written notice to Employee.

The contract also provided that Wisconsin law would apply.

In 2002, Quality's president, Cory Berg, sent a letter to the employees that contained the following warning:

> Along with all of our other divisions, I consider "People" to be a separate division and we're adopting a philosophy long used by Jack Welch at GE that calls for actively turning over the non-performing 10% of the employee pool each year. In Jack's words, "Whoever fields the best team wins, period". There will always be a bottom 10% and if we don't let them go each year it negatively affects our progress, your opportunities, and your income. An organization[']s people make all the difference both negatively and positively.

In the summer of 2002, Plunkett's immediate supervisor, Randy Davis, informed him that his performance had declined and that, if it did not improve before a certain date, some "hard decisions" would be made, leaving Plunkett convinced that he would soon be fired. At that point, Plunkett began looking for another job in his field. After meeting with no success, he began planning to start his own feed-supplement business and asked Davis if he would like to join him. Davis declined the offer and told Plunkett that, if he did not tell Berg about his plans, he (Davis) would have to do so. After Plunkett called Berg, he characterized his resulting termination from Quality as involuntary, although Berg insisted that Plunkett had resigned.

Mickey Myers and John Hill, who also left Quality's employ, began a competing business with Plunkett called Southern Pride Feed that covered a territory similar to, but not exactly the same as, their former territories with Quality. Berg notified them that he intended to enforce the non-competition agreements in their contracts. After they went forward with their plans, Quality filed this lawsuit against Plunkett.

At trial, Quality presented the testimony of Berg and Davis. Plunkett, his wife Kim Plunkett, Mickey Myers, Mickie Hill (a Quality customer who switched to Southern Pride), Roger Scroggin (another Quality customer who partially switched to Southern Pride), and Freeman Davis (a former Quality customer who now buys from Southern Pride) testified on behalf of Plunkett. Plunkett also presented the subpoenaed testimony of Mike Furrh, a sales representative of Quality in east Texas, who works without a non-competition agreement.

In a letter opinion, the trial court made the following findings:

>As a general note, I view with some suspicion, QLF's contention that it has any protectable interest worthy of protection in light of the fact that one employee in a comparable position has no covenant not to compete clause in his contract, and such a clause was apparently added to another employee's contract after some period without one.

>The reasonableness test is based upon the theory that the restraint placed upon one party must not be greater than is necessary for protection of the other. *Moore v. Midwest Distrib., Inc.*, [76 Ark. App. 397,] 65 S.W.3d 490, 493 (Ark. App. 2002) (contract unreasonable where no protectable interest was violated) (citing *Federated* [*Mut. Ins. Co. v. Bennett*, 36 Ark. App. 99, 818 S.W.2d 596 (1991)]).

>Courts have concluded that covenants not to compete in employment contracts must be written to protect only a legitimate business interest, and are enforceable only when there is special training provided by the employer or where confidential business information is at risk (such as trade secrets or customer lists), and then only if there is proof that the information was used to obtain an unfair competitive advantage. *Federated*, 818 S.W.2d at 597-598.

>Trade secrets protectable by covenants not to compete include secret: plans, processes, tools, methods or compounds. In the past, the courts have upheld the contract of a manager who possessed knowledge of secret formulas, compounds and techniques used in the business. *See e.g., Orkin Exterminating Co. of Ark. v. Murrell*, [212 Ark. 449,] 206 S.W.2d 185 [(1947)]. However, in this case there is no evidence that Plunkett actually accessed or benefitted from QLF's formulas.

>The customer list, however under some circumstances, may be a confidential, protectable interest. But, here Plunkett actually compiled the customer list based on contacts developed through his previous employment and by prospecting while an employee of QLF's. Plunkett came to QLF experienced in the position and industry, and there is evidence his experience and previous customer base actually enhanced QLF's market position.

>And QLF concedes that their customer lists are not trade secrets and can easily be reconstructed by competing salesmen. It is not the

list as much as the goodwill developed by Mr. Plunkett while in their employ that they wish to protect. This comes closer to a protectable interest than the list itself, but QLF's inconsistency in attempting to protect this interest leads me to conclude that their real goal is to prevent competition.

Either Wisconsin or Arkansas courts would most likely determine the geographical limitation is enforceable if the limitation relates directly to Plunkett's actual territory. The territory restricted may not be larger than the employer's historic trade area. *Jaraki v. Cardiology Assocs.*, [75 Ark. App. 198] 55 S.W.3d 799, 805 (Ark. App. 2001). Here the limitation is based on Plunkett's actual territory, although there is some confusion as to the ability of QLF to designate "temporary areas." In spite of this, I find the geographic restriction to be reasonable.

For the final test of the contract, because the two-year time limitation is not tied to protection of the customer list and is detrimental to Plunkett's ability to earn a living in his chosen profession, I conclude the contract's time limitation is unreasonable. Case law indicates that employment contracts which restrict competition are highly suspect and must be evaluated closely.

The Arkansas court has upheld a contract where the one-year time limitation was coordinated with one-year promotions provided by suppliers. [*Borden, Inc. v. Huey*, 261 Ark. 313, 547 S.W.2d 760 (1977)]. Likewise, the court has upheld an employment contract with a two-year limitation when the limitation was tied to the two-year life span of confidential, coded pricing information. *All-State Supply, Inc. v. Fisher* [*of N.E. Ark., P.A.*, 252 Ark. 962,] 483 S.W.2d 210 (Ark. 1972). That is not the case here. There is no direct tie to the time period and protection of the customer list. In other words, why two years as opposed to one year or ten years for that matter?

Plunkett would be unable to work in his chosen profession without extreme hardship. He has spent most of his working life in this profession. Ranch work or once-a-week work at a livestock auction does not provide similar income or security. Thus, because the time limitation is not tied to a protectable interest and severely restricts Plunkett's ability to earn a living, I conclude the limitation is unreasonable.

QLF's contract contains at least one element that may be unenforceable. It has long been the rule, at least in Arkansas, that

when a covenant not to compete over reaches, the court will not make a new contract for the parties. *Federated*, 818 S.W.2d at 600. Thus, each element of the contract must be valid as written for the contract to be enforced. Consequently, even if I found the customer list to be a protectable interest, I find the contract to be unenforceable due to the lack of correlation between the protectable business interest and the time limitation. In other words, the contract is unreasonable as to this employee.

In its September 10, 2003 order, the trial court held that, under Wisconsin law (which it stated applies the same principles as Arkansas law), the covenant not to compete was unreasonable and unenforceable. This appeal followed.

We will not reverse the trial court's findings regarding covenants not to compete unless the findings are clearly erroneous. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999); *Jaraki v. Cardiology Assocs. of N.E. Ark., P.A.*, 75 Ark. App. 198, 55 S.W.3d 799 (2001). Covenants not to compete are reviewed on a case-by-case basis. *Moore v. Midwest Distrib., Inc.*, 76 Ark. App. 397, 65 S.W.3d 490 (2002).

Quality contends that, under Wisconsin law, it had a protectable interest in Plunkett's relationships with his customers.[3] It also asserts that the trial court erred in finding that the two-year time limit was not tied to the protection of the customer list and was detrimental to Plunkett's ability to earn a living. It points to Berg's testimony that it takes about five years for a new district manager to establish a network of customers and asserts that, "[c]ompared to the actual time to remove a salesman from the mind of the customer, two years is not at all unreasonable." Because we agree with the circuit court that, under the facts of this case, the time limitation was unreasonable when applied to Plunkett, we need not address whether Quality had a protectable interest.

The trial court correctly stated that Arkansas and Wisconsin courts apply essentially the same principles in deciding whether covenants not to compete are valid. In Arkansas, covenants not to compete are not favored by the law, although they have been enforced in some cases. *Statco Wireless, LLC v. Southwestern Bell Wireless, LLC*, 80 Ark. App. 284, 95 S.W.3d 13 (2003). For a

---

[3] Quality does not argue, however, that Plunkett had access to trade secrets or that it provided him with special training.

covenant to be enforced, three requirements must be met: 1) the covenantee must have a valid interest to protect; 2) the geographical restriction must not be overly broad; 3) a reasonable time limit must be imposed. *Id.* The restraints imposed by the covenant must not be broader than necessary to protect the covenantee's interests. *See HRR Ark., Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 87 S.W.3d 232 (2002); *Girard v. Rebsamen Ins. Co.*, 14 Ark. App. 154, 685 S.W.2d 526 (1985). The law will not enforce a contract that merely prohibits ordinary competition. *Federated Mut. Ins. Co. v. Bennett*, 36 Ark. App. 99, 818 S.W.2d 596 (1991). Further, the contract must be valid as written; the court will not apportion or enforce a contract to the extent that it might be considered reasonable. *Bendinger v. Marshalltown Trowell Co., supra.* It has long been the rule that, when a covenant not to compete is too far-reaching to be valid, the court will not make a new contract for the parties. *Federated Mut. Ins. Co. v. Bennett, supra.*

The extent of restraint is a critical factor in determining a covenant's reasonableness. If the restraint prohibits the promisor from engaging in activities that are unnecessary to protect the promisee, the covenant is unreasonable. *See Easley v. Sky, Inc.*, 15 Ark. App. 64, 689 S.W.2d 356 (1985). The test of reasonableness of contracts in restraint of trade is that the restraint imposed upon one party must not be greater than is reasonably necessary for the protection of the other and not so great as to injure the public. *Moore v. Midwest Distrib., Inc., supra.*

Arkansas courts have dealt with the issue of whether a covenant not to compete, executed by an employee or agent involved in sales, is too broad. In *Borden, Inc. v. Huey*, 261 Ark. 313, 547 S.W.2d 760 (1977), the covenant was held to be a legitimate means of protecting the principal's desire that a former employee not appropriate its customers. *See also Girard v. Rebsamen Ins. Co., supra.* On the other hand, the opposite result was reached in *Evans Labs., Inc. v. Melder*, 262 Ark. 868, 562 S.W.2d 62 (1978); *Orkin Exterminating Co. v. Weaver*, 257 Ark. 926, 521 S.W.2d 69 (1975); and *Federated Mut. Ins. Co. v. Bennett, supra.*

In Wisconsin, this issue is controlled by a statute. Wisconsin Statutes Annotated section 103.465 (2002) provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified period of time is

lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void, and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

In Wisconsin, covenants not to compete are regarded with suspicion by the courts because the law encourages the mobility of workers and "free movement and personal liberty of employees are preeminent features of employment relations[.]" *Farm Credit Servs. of N. Cen. Wis., ACA v. Wysocki*, 243 Wis. 2d 305, 312, 627 N.W.2d 444, 447 (2001). The Wisconsin courts use a five-factor analysis to determine whether a covenant not to compete is enforceable. It must: (1) be necessary to protect the employer; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; (5) not be contrary to public policy. *Heyde Cos., Inc. v. Dove Healthcare, LLC*, 258 Wis. 2d 28, 654 N.W. 2d 830 (2002). Additionally, the following canons of construction are applied to restrictive covenants: (1) they are prima facie suspect; (2) they must withstand close scrutiny to pass legal muster as being reasonable; (3) they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; (4) they are to be construed in favor of the employee. *Id.* A restrictive covenant that goes beyond what is necessary for an employer to protect its interest or that creates an undue hardship on an employee will not be enforced. *Id.*

In *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 304 N.W.2d 752 (1981), the Wisconsin Supreme Court rejected a flat rule invalidating all restrictive covenants whose scope exceeded a former employee's actual customer contact and recognized that what is reasonable varies from case to case. It also discussed the relevant factors in determining whether a restriction is unreasonable as to the employee:

> In many instances involving route salesmen or other non-management employees, the scope of actual customer contact may serve as a guide to what scope of restriction is reasonable. . . . But the customer contact notion takes on a new dimension where the person involved is a high-level management employee who is apt to have access to confidential business information. . . . Thus we do not believe the determination of whether a restraint of this type is reasonably necessary for the protection an employer can be intelli-

gently made without a consideration of the nature and character of such information, including the extent to which it is vital to the employer's ability to conduct its business, the extent to which the employee actually had access to such information, and the extent to which such information could be obtained through other sources. As to whether the restraint is unreasonable to the employee, we do not see how such a determination could be made without considering additionally the extent to which the restraint on competition actually inhibits the employee's ability to pursue a livelihood in that enterprise, as well as the particular skills, abilities, and experience of the employee sought to be restrained. These, of course, are not exhaustive, since the very essence of what is reasonable involves the totality of the circumstances.

101 Wis. 2d at 469-70, 304 N.W.2d at 756-5; *see also Equity Enters., Inc. v. Milosch*, 247 Wis. 2d 172, 633 N.W.2d 662 (Wis. App. 2001).

■ The trial court's finding that the two-year limitation would severely restrict Plunkett's ability to earn a living and that it was therefore unreasonable, is supported by the evidence. Plunkett testified that he graduated from high school in 1974 and, for the next several years, attended, but did not graduate from, a vocational school for the construction trade and worked on a ranch and at a sale barn. He said that he has been in this line of work since 1980 and stated: "All I know how to do is sell liquid feed. . . ." He also said that a sale barn would pay only minimum wage and that he could no longer do construction work because of trouble with his back. In light of these facts, we cannot say that the circuit court erred in finding the two-year restriction to be unreasonable as applied to Plunkett. Accordingly, we affirm the circuit court's refusal to enforce the non-competition agreement.

Affirmed.

STROUD, C.J., agrees.

NEAL, J., concurs.