Stephanie FREEMAN and Konecny Insurance Services, Inc. *v.*
BROWN HILLER, INC.

CA 07-717                                                281 S.W.3d 749

Court of Appeals of Arkansas
Opinion delivered April 2, 2008

[Rehearing denied May 7, 2008.]

*Dover Dixon Horne, PLLC,* by: *Charles W. Reynolds* and *Nona M. Robinson,* for appellants.

*Cross, Gunter, Witherspoon & Galchus, P.A.,* by: *Benjamin H. Shipley* and *Brian A. Vandiver,* for appellee.

JOHN B. ROBBINS, Judge. Stephanie Freeman and Konecny Insurance Services, Inc., have appealed from an order of the Sebastian County Circuit Court granting a preliminary injunction in an action brought by Freeman's former employer, appellee Brown Hiller, Inc. (BHC), for breach of Freeman's employment contract and for misappropriation of BHC's trade secrets. BHC has filed a cross-appeal, arguing that the preliminary injunction was not broad enough. We affirm on direct and cross-appeal.

BHC is an insurance agency in Fort Smith for which Freeman went to work in 2000. In 2001, she began selling insurance for BHC and signed a contract that contained the following nondisclosure and noncompetition provisions:

> 7. <u>Trade Secrets</u>. The Employee shall not, at any time, or in any manner, either directly or indirectly, divulge, disclose, or communicate to any person, firm or corporation, in any manner whatsoever, any information concerning any matters affecting or relating to the business of the Employer, including without limiting the generality of the foregoing, any of its customers, prices, or premiums it obtains or has obtained from the sale of, or at which it sells or has sold, any insurance policies, the renewal dates of any such policies, or any other information concerning the business of Employer or its clients, its manner of operation, its plans, processes, or other data, without regard to whether all of the foregoing matters will be deemed confidential, material, or important, the parties hereto stipulating that as between them, the same are important, material and confidential and greatly affect the effective and successful conduct of the business of the Employer and the Employer's goodwill, and that any breach of the terms of this paragraph shall be a material breach of this Agreement. Employee acknowledges that damages would be substantial and difficult to measure, therefor [sic] any breach or threatened breach of this provision could result in substantial damages to the Employer for which Employer would be entitled to immediate injunctive relief.

8. <u>Covenant Not to Compete</u>. Employee shall not, during the term of this contract or for a term of two (2) years immediately following the termination of this contract, regardless of who initiated the termination, directly or indirectly for himself/herself or on behalf of or in conjunction with any other person, firm, partnership, or corporation, solicit or attempt to solicit the business or patronage of any person, firm, corporation, or partnership of any of the customers or clients of the Employer. All of the terms of Section 7. above shall remain in full force and effect for a period of two (2) years after the termination of Employee's employment. The Employee further agrees that he/she will return all manuals, expiration lists, prospect lists, whether such list be on hard copy, computer, computer diskette, tape, or other devices, and all other materials, supplies, and equipment used by Employee during his/her employment with the Employer. It is understood and agreed that Employee shall not remove any of the foregoing from the premises of Employer.

BHC's employee handbook also included a nondisclosure statement.

Freeman's agreement with BHC was renewed annually until January 26, 2007, when she resigned. The next month, she began work as an insurance-sales representative with Konecny, one of BHC's direct competitors. On March 1, 2007, BHC sued Freeman and Konecny. It asserted causes of action for fraud and breach of contract and the duty of loyalty against Freeman. Against Konecny, it asserted tortious interference with a contractual relationship. Against both appellants, BHC asserted violations of the Arkansas Trade Secrets Act. BHC alleged that they had taken its confidential and proprietary information; that Freeman had, after accepting employment with Konecny but before resigning from BHC, copied BHC's "Standard Benefits Summary/Proposal Format"; that Freeman had solicited business for Konecny using this format; that she had misappropriated BHC's proprietary "Written Services Time Line"; and that, before and after resigning from BHC, Freeman solicited its current clients to move their business to Konecny. According to BHC, at least four clients had either moved or attempted to move their accounts from BHC to Konecny. Recounting the considerable effort it took to protect the confidentiality of its trade secrets and the harm that appellants had already caused and would cause it in the future, BHC requested injunctive relief and damages.

BHC moved for a preliminary injunction restraining appellants from using, disclosing, or providing to any third party any

documents or information obtained from BHC or relating to BHC and its customers; destroying, secreting, or altering any documents or information obtained from BHC or relating to BHC or any of its customers; and soliciting or attempting to solicit any customer of BHC through the use of BHC's confidential proprietary information. It also asked for an injunction requiring appellants to return all records, documents, and information pertaining to BHC or its customers. In response, appellants argued that the restrictive covenants were overly broad and unenforceable and that the allegedly misappropriated documents were not trade secrets.

After a hearing, the court granted a preliminary injunction, finding that BHC had a protectable interest in its stock of customers; that the terms of the covenant not to compete were reasonable; that BHC had approximately three thousand customers and ten percent of the insurance business in Sebastian County; and that, because there was no geographic limitation in the covenant, Freeman was free to solicit and accept insurance business in Fort Smith and Sebastian County so long as it was not from BHC's customers. The court ruled that BHC had demonstrated a likelihood of success on the merits of its claims that Freeman had attempted to solicit insurance business from its customers; that she had breached the employment agreement; that one or more of the items listed in Paragraph 7 of the employment agreement were BHC's trade secrets, which had been misappropriated; and that BHC would suffer immediate and irreparable harm in the absence of preliminary injunctive relief.

The court ordered Freeman to refrain from doing the following:

> 1. Stephanie Freeman shall not, for a term of two (2) years following January 26, 2007, directly or indirectly for herself or on behalf of or in conjunction with any other person, firm, partnership, or corporation, solicit or attempt to solicit the business or patronage of any person, firm, corporation, or partnership of any of the customers or clients of BHC.

> 2. Stephanie Freemen shall not, for a term of two (2) years following January 26, 2007, in any manner, either directly or indirectly, divulge, disclose, or communicate to any person, firm, or corporation, in any manner whatsoever, any trade secrets or confidential information of BHC, including its customers, prices, or premiums it obtains or has obtained from the sale of, or at which it sells or has sold, any insurance policies, the renewal dates of any such

policies, or any other information concerning the business of Employer or its clients, its manner of operation, its plans, processes, or other data.

BHC moved for additional findings of fact on the ground that the circuit court had failed to make any findings of fact or conclusions of law with respect to the misappropriation of trade secrets by either appellant. The trial court denied that motion. Appellants filed a notice of appeal, and BHC filed a notice of cross-appeal.

Appellants argue that the trade-secrets provision and the covenant not to compete in the contract are unenforceable because they are overly broad. BHC argues on cross-appeal that the trial court should have also based its injunction on the Trade Secrets Act and enjoined both appellants from misappropriating its trade secrets.

Arkansas Rule of Appellate Procedure–Civil 2(a)(6) provides that an appeal may be taken from an interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused. See Jaraki v. Cardiology Assocs. of N.E. Ark., P.A., 75 Ark. App. 198, 55 S.W.3d 799 (2001). We review a trial court's ruling on a request for a preliminary injunction under the abuse-of-discretion standard. Potter v. City of Tontitown, 371 Ark. 200, 264 S.W.3d 473 (2007). In determining whether to issue a preliminary injunction, the trial court must consider (1) whether irreparable harm will result in the absence of an injunction and (2) whether the moving party has demonstrated a likelihood of success on the merits. Id. When an appeal reaches us via an order granting or denying a preliminary injunction, we will not delve into the merits of the case further than is necessary to determine whether the trial court exceeded its discretion. Id. The sole question on appeal is whether the trial court departed from the rules and principles of equity in making the order and not whether we would have made the order. Id.

The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief. Three Sisters Petroleum, Inc. v. Langley, 348 Ark. 167, 72 S.W.3d 95 (2002). The supreme court has recognized that an action for damages is inadequate in a case involving the breach of a covenant not to compete. Bailey v. King, 240 Ark. 245, 398 S.W.2d 906 (1966). The test for determining the likelihood of

success on the merits is whether there is a reasonable probability of success in the litigation. *Three Sisters Petroleum, Inc. v. Langley, supra.* Consideration of this issue will require determining whether this covenant meets the requirements for a non–compete agreement in Arkansas. *See, e.g., Moore v. Midwest Distrib., Inc.,* 76 Ark. App. 397, 65 S.W.3d 490 (2002).

### Direct appeal

Appellants argue that the trade–secrets and noncompetition provisions are unenforceable because they do not contain a geographic restriction; they do not limit the nondisclosable information to the accounts that Freeman personally serviced; and they forbid her from soliciting any customer of BHC. They contend that the contract's trade–secrets provision is unenforceable because it is really an overly-broad covenant not to compete that is masquerading as a confidentiality and nondisclosure agreement. According to appellants, these provisions effectively prohibit Freeman from working in the insurance industry at all. They assert that it is permissible for Freeman to use her experience and knowledge, which was gained during her employment with BHC, in her new business without violating the contract or any law.

In order for a non–compete agreement to be valid, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed. *Advanced Envtl. Recycling Tech., Inc. v. Advanced Control Solutions, Inc.,* 372 Ark. 286, 275 S.W.3d 162 (2008). If the restraint prohibits the promisor from engaging in activities that are unnecessary to protect the promisee, the covenant is unreasonable. *See Easley v. Sky, Inc.,* 15 Ark. App. 64, 689 S.W.2d 356 (1985). Whether the restraint is reasonable is to be determined by considering whether it is only broad enough to afford a fair protection to the interest of the party in whose favor it is given and not so large as to interfere with the interests of the public. *Girard v. Rebsamen Ins. Co.,* 14 Ark. App. 154, 685 S.W.2d 526 (1985).

We view covenants not to compete differently based on whether they grow out of an employment relationship or whether they are made in connection with the sale of a business. Covenants not to compete in employment contracts are subject to stricter scrutiny than those connected with a sale of a business. *HRR Ark., Inc. v. River City Contractors, Inc.,* 350 Ark. 420, 87 S.W.3d 232 (2002). Even in the employment relationship, however, an em-

ployer has a legitimate desire in seeing that a former employee does not appropriate its customers. *See Quality Liquid Feeds, Inc. v. Plunkett,* 89 Ark. App. 16, 199 S.W.3d 700 (2004); *Statco Wireless, LLC v. Southwestern Bell Wireless, LLC,* 80 Ark. App. 284, 95 S.W.3d 13 (2003).

Arkansas courts have struggled with the concept of whether a covenant not to compete, executed by an employee or agent involved in sales, is too broad. In *Borden, Inc. v. Huey,* 261 Ark. 313, 547 S.W.2d 760 (1977), and *Girard v. Rebsamen Insurance Co., supra,* such covenants were held to be a legitimate means of protecting a principal's interest in preventing a former employee from appropriating its customers. However, a different result was reached in *Evans Laboratories, Inc. v. Melder,* 262 Ark. 868, 562 S.W.2d 62 (1978); *Orkin Exterminating Co. v. Weaver,* 257 Ark. 926, 521 S.W.2d 69 (1975); *Federated Mut. Ins. Co. v. Bennett,* 36 Ark. App. 99, 818 S.W.2d 596 (1991); and *Rebsamen Ins. Co. v. Milton,* 269 Ark. 737, 600 S.W.2d 441 (Ark. App. 1980).

In *Girard v. Rebsamen Insurance Co., supra,* we explained that the single most important asset of most businesses is its stock of customers and that protection of that asset is a legitimate interest. We also noted that an employer is especially vulnerable to losing customers when his employee deals with customers away from the business and builds up personal relationships that bind the customers to him. In that case, the restrictive covenant had no geographic limitation and prohibited Girard from soliciting or accepting any insurance business on any account that Girard was servicing when he left Rebsamen. We distinguished *Rebsamen Insurance Co. v. Milton, supra,* and explained:

> Appellant contends the restrictive covenant's two-year time limit and its silence with respect to geographical area are unreasonable. However, when viewing the covenant against the facts of this case, we find no merit in appellant's contentions. The chancellor correctly distinguished the non-competition covenant in *Rebsamen Insurance v. Milton, supra,* from the one in issue here. First, Milton was forbidden to engage in any insurance *or other business* in which Rebsamen was engaged, whereas, here appellant was prohibited from engaging in the insurance business only. Second, and more importantly, Milton was forbidden to solicit or accept indirectly insurance business from any current customer or account or one who had been a customer at any time within three years of Milton's termination; while here appellant is prohibited for two years from soliciting or accepting insurance only from customers whose *ac-*

*counts he serviced* at the time of his termination. Undisputedly, appellant's restrictions concerning his post-termination business activities are much narrower than in *Milton*.

Under the parties' agreement, appellant is not forced to go elsewhere to open his agency. Since no geographical restriction is mentioned, he can continue his business in the same city in which he lived while employed with appellee. Appellant is free to solicit and accept business from 95% of the overall insurance market, and, in fact, is free to solicit and accept business from 80% of the customers of appellee's Springdale office. Appellant's only restriction involves that portion of appellee's business that he serviced when he quit appellee.

14 Ark. App. at 159-60, 685 S.W.2d at 529.

Appellants argue that this case is distinguishable from *Girard*. We disagree. Although it is true that Girard's covenant was narrower by its being limited to the customers he serviced, neither provision at issue here is nearly as broad as the one in *Milton*. We believe that BHC clearly had an interest in protecting the confidential information contained within the documents it seeks to protect, especially its customer lists, and that the trial court's interpretation of the nondisclosure and noncompetition provisions was reasonable.

When Freeman began selling insurance, BHC gave her an existing customer list and "book of business" valued at over $100,000. Because she was licensed to sell all types of insurance, she had access to information about all of BHC's customers. She had access to all of BHC's customers' names, addresses, telephone numbers, insurance policies (including their objectives and renewal dates), as well as similar information about potential customers. Freeman handled at least 165 accounts, which generated over $249,000 in gross revenue, in the twelve months before she resigned. BHC gave her its "Play Book," which it had developed over many years; Freeman did not return this book. She also had access to an internet-based subscription with Zywave, for which BHC had paid $8500 initially and over $16,000 annually. As a licensee of Zywave, BHC was able to create benefit-plan analyses and marketing plans, including its Standard Benefits Summary/Proposal Format. Konecny is not a licensee of Zywave. Freeman also had access to BHC's "Written Services Time Line," a marketing tool that BHC created and provides to its customers as

a means of "benchmarking" its performance. To protect the confidentiality of this information, BHC regularly reminded its employees to protect its trade secrets; included a nondisclosure provision in its employee handbook and in the employment agreements; and made its computer system accessible only by password.

On this record, we cannot say that the nondisclosure and noncompetition provisions were broader than necessary to protect BHC's interests or that the circuit court abused its discretion in granting a preliminary injunction. Thus, we affirm the direct appeal.

*Cross-appeal*

BHC argues on cross-appeal that the circuit court abused its discretion in not enjoining both appellants under the Arkansas Trade Secrets Act. A trade secret is information, including a formula, pattern, compilation, program, device, method, technique, or process that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Ark. Code Ann. § 4-75-601(4) (Repl. 2001). Arkansas courts rely on six factors to determine whether something is a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and its competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could properly be acquired by others. *See City Slickers, Inc. v. Douglas,* 73 Ark. App. 64, 40 S.W.3d 805 (2001).

As explained above, BHC implemented several methods to ensure that its information about its customers and their insurance policies remained secret. The extent of measures taken by a company to guard its information is an important factor in determining whether a matter is a trade secret. *See Conagra, Inc. v. Tyson Foods, Inc.,* 342 Ark. 672, 30 S.W.3d 725 (2000). Customer lists obtained through use of a business effort, and the expenditure of time and money that are not readily ascertainable and are kept confidential, are given protection as a trade secret under the

common law and the Arkansas Trade Secrets Act. *Allen v. Johar, Inc.*, 308 Ark. 45, 823 S.W.2d 824 (1992).

We agree with BHC that all of its customer information, the Zywave software and the documents produced thereby, its "Play Book," and its "Written Services Time Line" came within the protection of the Trade Secrets Act. However, to be entitled to injunctive relief, actual or threatened misappropriation must be shown. Ark. Code Ann. § 4-75-604 (Repl. 2001). Misappropriation means:

(A) Acquisition of a trade secret of another person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret; or

(ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(a) Derived from or through a person who had utilized improper means to acquire it;

(b) Acquired it under circumstances giving rise to a duty to maintain secrecy or limit its use; or

(c) Derived from or through a person who owed a duty to the person seeking relief to maintain secrecy or limit its use; or

(iii) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ark. Code Ann. § 4-75-601(2) (Repl. 2001). An injunction may issue if there is evidence that an inevitable misappropriation will occur. *See Cardinal Freight Carriers, Inc. v. J.B. Hunt Transp. Servs., Inc.*, 336 Ark. 143, 987 S.W.2d 642 (1999).

BHC introduced evidence that, before Freeman resigned, she accessed, copied, and deleted over 300 computer files; that the documents she accessed included BHC's customer and

prospective customer lists, including each agent's annual goal and BHC's president's personal files (including customer lists and confidential information about a potential acquisition). BHC also showed that Freeman solicited some clients of BHC to move their business to Konecny while she was still employed at BHC and that at least four clients moved or attempted to move their business. BHC also demonstrated that Freeman contacted several of its customers after she left and that many of them had renewal dates within three months. In fact, Freeman gave the City of Lavaca, a BHC customer, a Standard Benefits Summary/Proposal Format and a Written Services Time Line after she left that appeared to be based upon BHC's documents. In light of Freeman's actions, we agree with BHC that it would have been appropriate for the preliminary injunction against her to also be based upon the Trade Secrets Act. Even so, this was a matter of discretion for the circuit court, and we are reluctant to say that it abused that discretion. In any event, the relief obtained against Freeman thereby would have been no broader than the preliminary injunction already entered.

We also cannot say that the circuit court abused its discretion in failing to include Konecny within the terms of the injunction. Other than Freeman's actions, BHC's evidence did not indicate that Konecny had appropriated BHC's trade secrets. We recognize, however, that this appeal is interlocutory and point out that, if evidence should develop that Konecny is appropriating BHC's trade secrets, or that it is attempting to do so, BHC can request additional preliminary injunctive relief.

Affirmed on direct appeal; affirmed on cross-appeal.

HART and MILLER, JJ., agree.