United States Court of Appeals
For the Eighth Circuit

_____

No. 13-3671
_____

NanoMech, Inc.,

*Plaintiff - Appellant*,

v.

Arunya Suresh,

*Defendant - Appellee*.
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: September 8, 2014
Filed: February 6, 2015
_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

NanoMech, Inc. sued a former employee, Arunya Suresh, for breach of her noncompete agreement. The district court[1] granted judgment on the pleadings for

_____

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

Suresh, ruling that the noncompete agreement was unenforceable under Arkansas law.  NanoMech appeals, and we affirm.

I.

NanoMech, a Delaware corporation with its principal place of business in Arkansas, researches and develops nanotechnologies.  The company specializes in creating nanotechnology products in the areas of nano-machining, manufacturing, lubrication, energy, biomedical coatings, and strategic military applications.

Before NanoMech hired Suresh, she signed a non-disclosure agreement in which she agreed to protect NanoMech's interest in any information that was disclosed to her for the purpose of evaluating a potential employment relationship. NanoMech then hired Suresh in March 2010.  As a condition of her employment, Suresh signed an employment agreement, which by its terms is governed by Arkansas law.  The agreement contains the following noncompete provision:

> COVENANT NOT TO COMPETE:  The Employee agrees that during the term of this Agreement, and for two (2) years following termination of this Agreement by the Company, with or without cause; or, for a period of two (2) years following a termination of this Agreement by the Employee, the Employee will not directly or indirectly enter into, be employed by or consult in any business which competes with the Company.

R. Doc. 12, Ex. A, at 3.

During her employment with NanoMech, Suresh participated in projects involving nano-integrated materials and the manufacturing processes for nanoparticle-based products.  Among other things, Suresh researched and developed

NanoMech's multi-component lubrication product, nGlide, which is the subject of a pending U.S. patent application.

Suresh resigned from NanoMech on May 2, 2012, stating that she was planning to pursue doctoral studies full-time. In March 2013, however, NanoMech discovered that Suresh had accepted employment as an Application Chemist with BASF, a worldwide chemical company that develops engine lubricants.

In May 2013, NanoMech sued Suresh, alleging breach of her non-disclosure agreement and breach of her covenant not to compete on the ground that BASF directly competes with NanoMech and its nGlide technology. The company sought to enjoin Suresh from employment with BASF for the remainder of the term of the noncompete and to enjoin her from disclosing any of NanoMech's confidential information. NanoMech also sought compensatory damages.

Suresh answered the complaint, asserting that NanoMech failed to state a claim. She also counterclaimed for tortious interference with business expectancy. Six days after she submitted her answer, Suresh moved to dismiss NanoMech's complaint pursuant to Rule 12(b)(6) for failure to state a claim. NanoMech opposed Suresh's motion to dismiss, arguing both that it was untimely and without merit.

The district court noted that Suresh's motion to dismiss for failure to state a claim was technically untimely under Rule 12(b)(6) because Suresh already had filed her answer, but in accordance with Rule 12(h)(2), the court construed her motion as a motion for judgment on the pleadings under Rule 12(c). The court granted Suresh's motion, concluding that the noncompete agreement was overbroad and unenforceable because it lacked a geographic scope and prevented Suresh from working for an undefined set of NanoMech's competitors in any capacity. The court also concluded that NanoMech failed to state sufficient facts to show that Suresh's breach of the non-disclosure agreement resulted in damages. After the court issued its order, Suresh

moved to dismiss her counterclaim against NanoMech. The court dismissed the counterclaim without prejudice, and that resolution suffices under our precedent to establish a final decision over which this court has appellate jurisdiction. *See Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*, 198 F.3d 685, 689 (8th Cir. 1999).

## II.

NanoMech appeals only the district court's ruling on the enforceability of the noncompete agreement. NanoMech first argues that the district court erred in construing Suresh's motion to dismiss as a motion for judgment on the pleadings. NanoMech argues that Suresh's motion was filed too late under Rule 12(b)(6), because Suresh already had filed her answer, but was premature under Rule 12(c), because NanoMech had not yet answered Suresh's counterclaim. As the pleadings were not yet closed when Suresh filed her motion, NanoMech argues that the district court erred in converting her motion to dismiss into a motion for judgment on the pleadings.

Although NanoMech is technically correct that Rule 12(c) requires all pleadings to be closed before a motion may be filed, NanoMech did not suffer any prejudice as a result of the district court's decision. Suresh moved to dismiss only NanoMech's claims, which were closed when Suresh filed her motion. By the time the district court ruled on Suresh's motion, NanoMech had answered Suresh's counterclaim, which closed the pleadings with respect to all claims. Any error in the district court's decision to convert Suresh's motion to dismiss into a Rule 12(c) motion for judgment on the pleadings was therefore harmless. *Cf. Am. Fed'n of State, Cnty. and Mun. Emps. v. City of Benton*, 513 F.3d 874, 878 (8th Cir. 2008).

The more substantial question is whether the district court properly granted judgment on the pleadings in favor of Suresh. We review a motion for judgment on the pleadings under the same standard that governs a motion to dismiss under Rule 12(b)(6). *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912-13 (8th Cir. 2014). Therefore, we must consider whether NanoMech has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Covenants not to compete are reviewed on a case-by-case basis in Arkansas, *Bendinger v. Marshalltown Trowell Co.*, 994 S.W.2d 468, 472 (Ark. 1999), and reasonableness is "determined under the particular circumstances," of each case. *Optical Partners, Inc. v. Dang*, 381 S.W.3d 46, 54 (Ark. 2011). But this approach does not mean that judgment on the pleadings is never permissible. A court may dismiss an action to enforce a noncompete agreement where the facts adduced in the pleadings show that an evidentiary hearing is not necessary to make the reasonableness determination. NanoMech was required to allege facts sufficient to support a claim for relief that is plausible on its face.

NanoMech argues that the district court erred in holding the noncompete agreement unreasonable and therefore unenforceable under Arkansas law. A restraint of trade is reasonable only when it is "no greater than what is reasonably necessary to secure the interest of the party protected by the contract and is not so broad as to be injurious to the public interest." *Optical Partners,* 381 S.W.3d at 53. In general, a noncompete agreement must meet three requirements to be enforceable under Arkansas law: "(1) the [employer] must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed." *Duffner v. Alberty*, 718 S.W.2d 111, 112 (Ark. Ct. App. 1986) (en banc). The district court held that Suresh's noncompete was overbroad, and thus

unenforceable, because it lacked a geographic restriction and failed to define what activities Suresh was prohibited from performing for NanoMech's competitors.

NanoMech asserts that the success of its research, development, and commercialization depends on its ability to protect the confidentiality of its proprietary information. The company argues that during Suresh's employment with NanoMech, she had broad access to the company's trade secrets, including its chemical formulas, manufacturing processes, and business strategies. NanoMech thus contends that a broad covenant not to compete is reasonable because there is a risk that Suresh would disclose trade secrets if she were permitted to work for a competing nanotechnology company.

While it is true that trade secrets warrant increased protection under Arkansas law, *Orkin Exterminating Co. of Ark. v. Murrell*, 206 S.W.2d 185, 189-90 (Ark. 1947), a noncompete agreement that protects trade secrets will not be enforced if it is overbroad. *Mercy Health Sys. of Nw. Ark., Inc. v. Bicak*, 383 S.W.3d 869, 874-75 (Ark. Ct. App. 2011). Suresh's agreement contains no geographic limitation and imposes no restrictions on the activities Suresh is prohibited from performing for other nanotechnology companies. Under the plain language of the agreement, Suresh would be prohibited from working for any company that is a competitor of NanoMech, in any capacity, anywhere in the world. Even though NanoMech's proprietary interests warrant protection, the leading Arkansas authorities suggest that Suresh's noncompete agreement unduly infringes on her ability to pursue work in her chosen field, and is therefore overbroad.

NanoMech contends that a lack of a geographic restriction in a noncompete agreement is not fatal under Arkansas law. It directs our attention to *Girard v. Rebsamen Ins. Co.*, 685 S.W.2d 526 (Ark. Ct. App. 1985), and *Freeman v. Brown Hiller, Inc.*, 281 S.W.3d 749 (Ark. Ct. App. 2008), where the Arkansas Court of Appeals upheld noncompete agreements that contained no geographic limitation. In

-6-

both cases, however, the agreements narrowly circumscribed the prohibitions on the employees. The employees were permitted to engage in the same business as their former employers, in any geographic location, but they were prohibited from soliciting any customers with whom they had contact while working for their former employers. *Freeman*, 281 S.W.3d at 752, 755-56; *Girard*, 685 S.W.2d at 527, 529-30. In *Girard*, the noncompete still permitted the employee "to solicit and accept business from 95% of the overall insurance market." *Girard*, 685 S.W.2d at 529. The employee in *Girard* was therefore free to pursue his trade in any area of the country, provided he did not solicit former clients. *See HRR Ark., Inc. v. River City Contractors, Inc.*, 87 S.W.3d 232, 239 (Ark. 2002).

Suresh's noncompete agreement is more analogous to the agreement at issue in *Bendinger*, 994 S.W.2d at 471-73, where the Arkansas court held unenforceable a noncompete agreement between a trowel company and its former employee because the agreement failed to provide a geographic limitation. The *Bendinger* court distinguished *Girard* and concluded that without a geographic limitation, the noncompete lacked any "inherent limitation" that functioned like the customer-specific restriction in *Girard*. *Id.* at 473. Suresh's noncompete agreement also is not customer-specific, so without a geographic scope to limit its application, the Arkansas courts are likely to deem the agreement overbroad.

NanoMech argues that an unlimited geographic scope is reasonable in this case because the company engages in global business and competes with nanotechnology companies around the world. The Third Circuit in *Victaulic Co. v. Tieman*, 499 F.3d 227 (3rd Cir. 2007), observed that "[i]n this Information Age, a *per se* rule against broad geographic restrictions would seem hopelessly antiquated," *id.* at 237, and NanoMech advances a similar theme here. But even assuming that the Arkansas court would accept a worldwide geographic scope as reasonable in this context, *cf. Bendinger*, 994 S.W.2d at 472 (citing cases suggesting that "where a company is actually engaged in nation-wide activities, nation-wide protection would appear to

be reasonable and proper"), Suresh's agreement is still overbroad because this agreement—unlike those approved in *Girard* and *Freeman*, *see id*. at 473 n.4—prohibits her from working in *any* capacity for *any* business that competes with the company. *Id*. at 473. Under Arkansas law, a noncompete agreement must be valid as written; a court may not narrow it. *Id*. As we understand Arkansas law, a blanket prohibition on Suresh's ability to seek employment of any kind with an employer in the nanotechnology industry anywhere in the world is unreasonable and thus unenforceable.

For the foregoing reasons, the judgment of the district court is affirmed.

_____